**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| **ROBERT A. GAUGHAN** | ) | |
| | ) | **No. 2:02 CV 169** |
| **v.** | ) | |
| | ) | **(arising from No. 2:97 CR 168)** |
| **UNITED STATES OF AMERICA** | ) | |

**MEMORANDUM and OPINION**

This matter is before the court on petitioner Robert Gaughan's "Motion Under § 2255 to Vacate, Set Aside, or Correct Sentence." (Mot. Under § 2255, civil cause no. 2:97 CR 168, criminal docket # 477; cause no. 2:02 CV 169, docket # 1.) The court conducted an evidentiary hearing regarding Gaughan's ineffective assistance of counsel claim on June 15, 2006. For the reasons set forth below, the petition is **DENIED**.

**I. BACKGROUND**

On December 15, 1997, Robert Gaughan was apprehended near his vehicle in Munster, Indiana, for engaging in a drug deal with an undercover DEA agent and a government informant while in possession of a firearm. He was accompanied by his girlfriend, Lori Kulikowski, who was also taken into custody.[1] Gaughan and Kulikowski were transported to the Munster police station, where they were interviewed. Gaughan made a series of incriminating statements linking him to the informant and others in connection with multiple drug transactions. Gaughan was then

---

[1] All counts against Kulikowski were eventually dismissed at trial. (Criminal docket # 273.)

transported to Calumet City for holding. At the time of his arrest, Gaughan had a history of cardiovascular disease and diabetes, and was prescribed medications by doctors to control these conditions. Throughout this case, Gaughan has insisted that he made these incriminating statements because of his medical condition and because authorities would not allow him access to his medications. Later that evening Gaughan was transported to a local hospital to receive treatment for his heart condition.

On December 16, 1997, an arrest warrant was issued for Gaughan pursuant to a federal criminal complaint. (Criminal docket # 1.) At the grand jury proceeding, DEA Agent Maurice King testified that Gaughan had requested his heart medication after he was transported from Munster to Calumet City for holding. Agent King indicated that officers other than himself went to Gaughan's car and found only an empty medicine bottle. (Tr. Trans. 585-86.) The grand jury returned a seven-count superceding indictment against Gaughan (and his co-defendants) on March 19, 1998. (Criminal docket # 78.)

Prior to trial, Gaughan moved to suppress the incriminating statements he made to DEA agents after his arrest, claiming that he made the statements because he was denied access to his medication. (Criminal docket # 54.) At the evidentiary hearing, Agent King testified once again. This time, he stated that he "vaguely" recalled some discussion about Gaughan's medical condition at the Munster station, but that it did not stand out as being of real concern to Gaughan. (Supp. H. Trans. 106-07.) Two other agents, Thomas Stipanich and Tom De Canter, also testified at the suppression hearing,

2

both attesting that Gaughan had not made any needs for medication known during his

arrest and interview at the Munster police station. (Supp. H. Trans. 68, 72, 125, 128-29.)

Kulikowski and two of Gaughan's physicians, Drs. Lou Ivanovic and Anthony Tze, also

testified at the hearing as to Gaughan's medical condition. At the end of the hearing, the

court denied the motion to suppress and made the following findings:

> The Defendant did not ask the arresting officers for his
> medication or for medical assistance. The Defendant did not
> tell the arresting officers that he was not feeling well, suffering
> chest pains, feeling faint or suffering from any other
> discomfort. The Court further finds that the statements that
> . . . the Defendant seeks to suppress were made knowingly and
> voluntarily, and not as the result of coercion, breach of
> promises or lack of medical assistance and medication.

(Supp. H. Trans. 151-52.)

Gaughan's trial began on January 11, 1999. (Criminal docket # 270.) Gaughan

was represented by attorneys Patrick Tuite and Patrick Cotter.[2] The Government

presented Jerry Bonner, the government informant and a co-conspirator in the drug

ring, who testified to his repeated drug dealings with Gaughan. The Government also

relied on taped phone conversations between Bonner and Gaughan and telephone

records revealing Gaughan and Bonner's extensive communications. The issue of

Gaughan's medication was again raised. Agent King testified that he had no present

---

[2] Gaughan names both Patrick Tuite and his associate Patrick Cotter in his
motion and memorandum as having provided ineffective assistance. (Mot. Under
§ 2255, at 5.) However, the vast majority of his argument deals with the alleged
shortcomings of Tuite. For this reason, while the court recognizes that Gaughan was in
fact represented by both Tuite and Cotter, the court generally refers to Tuite as
Gaughan's trial counsel in this opinion.

recollection of any request for medication during Gaughan's arrest, but he believed that his grand jury testimony was accurate– that Gaughan had requested his heart medication after he was transported from Munster to Calumet City. (Tr. Trans. 586-88.) Agent King also testified that Gaughan confessed that he had supplied Bonner with cocaine on 20 to 30 occasions and that the gun found in the car was his. (Tr. Trans. 571-72.) After the prosecution rested, Gaughan's counsel asked the court to take judicial notice of an Illinois statute, presented a stipulation, and rested. (Criminal docket # 281.)

The jury returned its verdict on January 19, 1999, finding Gaughan guilty of conspiracy to possess with intent to distribute more than 5 kg of cocaine and more than 50 g of cocaine base (Count 1); possession with intent to distribute cocaine (Count 3); traveling and inducing others to travel interstate with intent to promote, manage, establish, and carry on the illegal activity of possession with intent to distribute cocaine (Count 4); and carrying a firearm while engaged in a conspiracy to possess with intent to distribute cocaine (Count 7). (Criminal docket # 285.) The court denied Gaughan's subsequent motions for new trial and judgment of acquittal. (Criminal docket # 327, 348.) Gaughan was sentenced to a prison term of 295 months. (Criminal docket # 424.)

Gaughan retained new counsel, N.C. Deday LaRene, to represent him for sentencing and appeal. One of Gaughan's main arguments on appeal was that he did not have access to Agent King's grand jury testimony during the suppression hearing. The Seventh Circuit Court of Appeals held that the Government had not committed a *Brady* violation because Gaughan did gain access to Agent King's grand jury testimony

during the trial before the admission of Gaughan's confession into evidence; indeed, Gaughan's attorney used King's grand jury testimony to attempt to impeach King during the trial. *United States v. Stott*, 245 F.3d 890, 903 (7th Cir. 2001). Ultimately the Court of Appeals affirmed Gaughan's conviction but remanded for resentencing. *Id.* at 890. On remand, the court sentenced Gaughan to the 211-month sentence he is presently serving. (Criminal docket # 458.)

Gaughan first attempted to file a § 2255 petition on June 24, 2002 (Mot. Pursuant to § 2255, civil docket # 3), but he did not submit the required forms. The court allowed Gaughan to correct this error by October 15, 2002. (Order, civil docket # 6.) Gaughan then filed the proper § 2255 form on October 11, 2002. (Mot. Under § 2255, criminal docket # 477.) Gaughan's petition argued ineffective assistance of trial and appellate counsel. Gaughan later moved to amend his petition to include a claim based on the Supreme Court's decision in *United States v. Booker,* 543 U.S. 220 (2005). Gaughan, through appointed counsel, later withdrew his ineffective assistance of appellate counsel claim. (Notice, criminal docket # 614.) Gaughan's motion to amend and ineffective assistance of trial counsel claims are addressed in turn below.


## II. ANALYSIS

### A. Motion to Amend to Include **Booker** *claim*

Gaughan has presented a claim under *United States v. Booker,* 543 U.S. 220 (2005), and *Blakely v. Washington,* 542 U.S. 296 (2004), in an amendment to his § 2255 petition.

(Mot. to Amend and Supp., criminal docket # 552; Notice of Supp. Auth., criminal docket # 530.) In these filings, Gaughan argues that the length of his sentence was unconstitutionally increased based on factual findings made by the court by a preponderance of the evidence. (Mot. to Amend and Supp., criminal docket # 552, at 3.)

Gaughan's proposed amendment to his § 2255 petition is untimely[3] and the issues raised therein do not relate back to Gaughan's original petition.[4] In any case, even if the court allowed Gaughan to amend his § 2255 petition to include his *Booker* claim, the right recognized in *Booker* is not retroactively available in collateral attacks on a

---

[3] Gaughan's judgment was entered on June 15, 2001 (criminal docket # 459), giving him ten days to file notice that he was appealing to the Seventh Circuit. When Gaughan did not do so by June 25, 2001, the clock began to run on his ability to file a petition under § 2255. *See Wims v. United States,* 225 F.3d 186, 190 (2d Cir. 2000) (describing the eleventh day following judgment as "the very day on which Wims' conviction became final absent appeal"); *Martinez v. United States,* No. 02 Civ. 640, 2002 WL 31890948, at *2 (S.D.N.Y. Dec. 27, 2002) ("Petitioner's conviction became final ten business days later because she failed to appeal the judgment . . . ."). Gaughan filed his first § 2255 petition on June 24, 2002, with one day to spare. However, his amendment, first appearing in the form of his "Notice of Supplemental Authority," was filed on July 29, 2004 (criminal docket # 530), more than a month after the expiration of the one-year statute of limitations period. Gaughan's "Motion to Amend and Supplement" (criminal docket # 552) was similarly tardy, filed on April 4, 2005.

[4] Gaughan relies on *Ellzey v. United States*, 324 F.3d 521 (7th Cir. 2003), in which the Seventh Circuit held that amendments referring to the same trial and conviction may relate back to an original, timely filing. However, this decision was abrogated by the Supreme Court in *Mayle v. Felix,* 125 S. Ct. 2562, 2572 (2005). In *Mayle,* the Court held that the correct standard for judging whether an amended claim relates back to an original habeas petition is not whether the claims arose from the same trial, conviction, and sentence, but rather whether "the original and amended petitions state claims that are tied to a common core of operative facts." *Id.* at 2575.

sentence via § 2255. *McReynolds v. United States*, 397 F.3d 479 (7th Cir. 2005). Thus,

*Booker* provides Gaughan with no basis for relief.

**B. Ineffective assistance of trial counsel**

In an order dated August 29, 2005, the court determined that Gaughan's

ineffective assistance of trial counsel claim warranted an evidentiary hearing, which

was held on June 15, 2006. Four witnesses testified at the hearing. Lori Kulikowski,

Gaughan's girlfriend at the time of his arrest, testified first, followed by Gaughan

himself. The third witness to testify was Patrick Tuite , a former assistant state's

attorney who practices criminal defense, has managed hundreds of jury trials, and has

never been the subject of a disciplinary proceeding regarding his defense work in a

criminal case. The final witness was Patrick Cotter, Tuite's associate who assisted with

Gaughan's case. Based upon the testimony presented at the hearing and the court

record in this case, the court makes the following findings of fact and conclusions of law

as required by 28 U.S.C. § 2255 ¶ 2.

Because "'[t]he preferred method for raising a claim of ineffective assistance of

counsel is either by bringing a motion for new trial or a request for collateral relief

under 28 U.S.C. § 2255,'" Gaughan may properly raise his ineffective assistance claims

for the first time in this § 2255 proceeding. *United States v. Woolley,* 123 F.3d 627, 634 (7th

Cir. 1997) (quoting *United States v. Wiman,* 77 F.3d 981, 988 (7th Cir. 1996)). In seeking to

prove that his counsel rendered ineffective assistance, Gaughan "bears a heavy

burden." *Jones v. Page*, 76 F.3d 831, 840 (7th Cir. 1996) (citation omitted). The burden

requires Gaughan to point to particular instances of action (or inaction) on the part of

his attorney(s) which allegedly constitute ineffective assistance. *See Berkey v. United*

*States*, 318 F.3d 768, 772 (7th Cir. 2003); *United States v. Farr*, 297 F.3d 651, 657 (7th Cir.

2002); *Fountain v. United States*, 211 F.3d 429, 434 (7th Cir. 2000). Then, Gaughan must

show: (1) that his counsel's performance in those specified situation(s) was

unreasonably deficient; and (2) that "the deficient performance prejudiced the defense."

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). As the *Strickland* standard is

formulated in the conjunctive, Gaughan must make the requisite showing on *both*

elements; the court should deny an ineffective assistance of counsel claim if the

defendant has made an insufficient showing on either prong. *Id.* at 697; *Rastafari v.*

*Anderson*, 278 F.3d 673, 688 (7th Cir. 2002) ("A failure to establish either [*Strickland*]

prong results in a denial of the ineffective assistance of counsel claim."). The court may

assess the prongs in whichever order it chooses. *Strickland,* 466 U.S. at 697.

When considering whether an attorney's conduct was unreasonably deficient

under the first prong of the *Strickland* test, a court must operate under "a strong

presumption that counsel's conduct falls within the wide range of reasonable

professional assistance," and treat counsel's performance with high deference.

*Strickland*, 466 U.S. at 689; *see also Williams v. Washington*, 59 F.3d 673, 679 (7th Cir. 1995)

(the first prong of *Strickland* "contemplates deference to strategic decision-making"). In

order to prevail on the first prong of the *Strickland* test, a defendant must show that

counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "Generally when an attorney articulates a strategic reason for a decision, the court defers to that choice." *United States v. Cieslowski,* 410 F.3d 353, 360 (7th Cir. 2005) (citing *Strickland,* 466 U.S. at 690-91).

With regard to the second prong, the court will only disturb a criminal conviction if "there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." *Id*. at 694. In other words, "[i]n order to demonstrate that his federal constitutional right to effective assistance of counsel was violated, a defendant must show that effective assistance would have given him a reasonable shot at acquittal." *Gibbs v. VanNatta*, 329 F.3d 582, 584 (7th Cir. 2003) (noting that this is a "different and lower standard" than proving actual innocence); *see also Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect.").

Though Gaughan made several specific factual allegations in support of his claim that his trial counsel was constitutionally ineffective, it must be kept in mind that:

> [I]neffective assistance of counsel is a single ground for relief no matter how many failings the lawyer may have displayed. Counsel's work must be assessed as a whole; it is the overall deficient performance, rather than a specific failing, that constitutes the ground of relief.

*Peoples v. United States,* 403 F.3d 844, 848 (7th Cir. 2005) (citing *Bell v. Cone,* 535 U.S. 685,

697 (2002); *Strickland*, 466 U.S. at 690; *Holman v. Gilmore,* 126 F.3d 876, 881-84 (7th Cir.

1997)). Thus, while the court addresses Gaughan's factual allegations individually, it is

trial counsel's performance as a whole that must be judged.

### 1. Failure to seek second suppression hearing

Gaughan's first claim regarding the ineffective representation of trial counsel is

that Tuite failed to seek a second suppression hearing. Gaughan's argument focuses on

Agent King's testimony at the grand jury proceeding, the suppression hearing, and trial.

This testimony is reviewed below.

***Grand jury proceeding:*** Agent King was asked by a grand juror, "[Gaughan] had

this attack since you arrested him?" Agent King responded: "Well, actually he didn't

have it during the time that we arrested him. But once he was transported to jail [in

Calumet City] and he was going to be taken before the magistrate the following day,

that night he didn't have any of his medicine. We went to the car. We got the bottle that

his medicine was supposed to be in. It was empty. So unbeknownst to him he didn't

have any medicine with him." (Grand Jury Proc. Trans. 37-38.)

***Suppression hearing:*** Agent King was asked whether Gaughan made any

requests for his medication after his arrest while at the Munster station. King replied,

"Vaguely, vaguely. I recall there was some discussion about his medical condition."

(Supp. H. Trans. 106.) However, Agent King also stated that it did not stand out as

being of real concern to Gaughan: "Because unless he would have stated something

like, I need some medicine or I'm suffering from something, you know, that's the only

way it would have stood out to me. But based on the way he was conducting himself,

his demeanor, his willingness to cooperate, I didn't have any concerns about his

medical condition at that time." (Supp. H. Trans. 106-07.)

> *Trial:* Agent King testified as follows:
>
> Q [MR. TUITE:] Mr Gaughan told you the night of his arrest that he had a
> medical condition, didn't he?
> A [AGENT KING:] I testified before, I don't recall him mentioning
> anything about a medical condition.
> ...
> Q [MR. TUITE:] So when you were reading him his rights, you don't recall
> even vaguely him talking about his medical condition or a medical
> condition?
> A [AGENT KING:] I believe that he and Mr. De Canter may have had
> some discussion about that, but me myself, I had no discussion with him
> about his medical condition, sir.

Tuite then confronted Agent King with his grand jury and suppression hearing

testimony. Agent King stated that he had no present recollection of any request for

medication during Gaughan's arrest, but he believed that his grand jury testimony was

accurate. (Tr. Trans. 586-88.) "At that time, the facts more fresh in my mind, it's a

possibility - - my testimony is what's on that paper [transcripts of Grand Jury

proceedings]. At this moment, as I sit here, I can't really recall him requesting any medicine." (Tr. Trans. 587.)

Gaughan asserts that his car was never taken to the Calumet City jail. This fact is supported by Agent King's testimony that when Gaughan was transported to Calumet City, Gaughan's car was taken to Merrillville. (Supp. H. Trans. 110.) Given this fact, argues Gaughan, the request for medication could not have been made after he was taken to the jail in Calumet City. "[T]he request had to have been made prior to leaving the scene of the arrest [in Munster] where the car was" because there was no car in Calumet City in which Agent King or any other agents could find the empty medication bottle. (Memo. Supp. 5.) Gaughan claims that this "huge pile of evidence that proved Agent King to be a perjurer and liar" establishes that Gaughan's later statements at the Munster station were coerced and involuntary and should have been suppressed. (Memo. Supp. 10.)

Gaughan maintains that Tuite was either ignorant of Gaughan's legal right to renew his motion to suppress once Agent King's grand jury testimony was revealed, or alternatively, Tuite knew of this right and nevertheless acted unreasonably by failing to act on it. (Memo. Supp. 9.) Gaughan attests in his petition that Tuite "stated that once the Court ruled the question could not be raised again," and that "Tuite was adamant that the question as to suppression was over once the District Judge denied the [first] Motion to Suppress." (Memo. Supp. 5.)

While counsel may be ineffective for not knowing the law, *see e.g., Dixon v. Snyder,* 266 F.3d 693 (7th Cir. 2001) (ineffective assistance found where lawyer did not know that a damaging hearsay statement should have been inadmissible), Gaughan has a steep hill to climb to satisfy the first prong of *Strickland* and overcome the strong presumption that his counsel acted competently and strategically.

Gaughan first relies on one sentence of the Seventh Circuit's disposition of Gaughan's appeal. On appeal, Gaughan argued that the government's failure to disclose Agent King's grand jury testimony sooner was a *Brady* violation because the government withheld evidence favorable to Gaughan that should have been turned over prior to the first suppression hearing. *Stott,* 245 F.3d at 900. Under *Brady v. Maryland,* 373 U.S. 83, 87 (1963), the due process rights of an accused are violated when the government fails to turn over material evidence favorable to the defense. However, "[a]s long as ultimate disclosure is made before it is too late for the defendants to make use of any benefits of evidence, Due Process is satisfied." *United States v. Ziperstein,* 601 F.2d 281, 291 (7th Cir. 1979). Citing *Ziperstein,* the Seventh Circuit rejected Gaughan's argument:

> [T]he record shows that [Agent King's] grand jury testimony *was* disclosed prior to the admission of Mr. Gaughan's statement into evidence at trial and, therefore, at a time when Mr. Gaughan's counsel still had the option of asking the district court to reconsider its ruling on the motion to suppress. Indeed, the record not only establishes that the material was in the hands of the defense at this time, but also that it was used by the defense to cross-examine Agent King and to undermine his credibility.

13

*Stott,* 245 F.3d at 903 (emphasis in original).

Gaughan claims that "[t]he Seventh Circuit legitimized Petitioner's claim of ineffective assistance" by calling attention to the fact that Gaughan's counsel still had the option of renewing its motion to suppress. (Memo. Supp. 5.) Gaughan argues that Agent King's testimony was not available to him at the suppression hearing, and that had his trial counsel sought a second suppression hearing based on the grand jury testimony, "[s]urely this Court would not have denied the request, if made, as the Seventh Circuit said that such a request would have been proper in that circumstance." (Memo. Supp. 9-10.)

Gaughan's reliance on select excerpts of the Seventh Circuit's opinion in *Stott* is not persuasive. The Seventh Circuit did not comment on the wisdom of making a renewed motion to suppress Gaughan's incriminating statements, nor did it indicate whether the motion would ultimately have been successful. The Seventh Circuit's comment was in the context of a *Brady* analysis, and does not establish that Gaughan's counsel was ineffective for not renewing the motion to suppress.

Gaughan submits that his own testimony and the affidavit of his girlfriend, Lori Kulikowski, prove that Tuite was ineffective for failing to seek a second suppression hearing. In her affidavit, Kulikowski indicates that Tuite once told her and Gaughan that their case relied on a positive result at the suppression hearing. (Kulikowski Aff. ¶ 9.) Kulikowski further states: "Mr. Tuite was asked repeatedly by Robert [Gaughan] and me to 'impeach agent King' . . . Mr. Tuite declined to pursue the suppression issue

and became very defensive with his actions and words and would not address our complaint of agent King testifying falsely." (Kulikowski Aff. ¶ 10.) Kulikowski also testified at the evidentiary hearing, but her testimony did not contribute to Gaughan's argument on this point.

Gaughan has not presented sufficient evidence to establish that Tuite's decision not to seek a second suppression hearing was not a strategic decision. Tuite testified credibly at the hearing that he did not tell Gaughan that he was legally unable to reraise the issue of suppression. Tuite thought a renewed motion would be futile; he did not believe that the court would change its mind based on the discrepancies in Agent King's testimony. Instead, Tuite utilized the grand jury testimony during the trial and exposed the inconsistency in front of the jury in an effort to impeach him and damage his credibility. Gaughan has not overcome the strong presumption that this strategic decision fell within the wide range of reasonable professional assistance required under *Strickland*. Accordingly, Gaughan has failed to meet the first prong of the *Strickland* analysis as to this aspect of Tuite's conduct.

Even if the court went on to consider the second prong of *Strickland*, however, Gaughan would still not prevail. To reiterate, under the second prong, Gaughan must show that his case would have turned out differently had counsel performed effectively. More specifically, "'[w]hen the claim of ineffective assistance is based on counsel's failure to present a motion to suppress, we have required that a defendant prove the motion was meritorious.'" *Shell v. United States*, 448 F.3d 951, 955 (7th Cir.

15

2006) (quoting *United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005)). Gaughan has

not done so. Agents Stipanich and De Canter (himself a diabetic) both testified

consistently at the first suppression hearing that Gaughan had not made any needs for

medication known during his arrest and interview at the Munster police station.

Accordingly, the record and testimony presented at the June 15, 2006, hearing reveal

that a second suppression hearing would not have been meritorious and the court

would likely have reached the same conclusion. Because Gaughan cannot establish

either prong of *Strickland* with respect to Tuite's failure to renew the motion to

suppress, Gaughan cannot rely on this conduct in support of his ineffective assistance of

trial counsel claim.


### 2. Failure to call witnesses and put on defense

Gaughan also claims that trial counsel failed to call witnesses and put on a

defense. In essence, Gaughan claims that Tuite rushed Gaughan's case because Tuite

was set to begin a trial for a high-profile client, Judge Kilander, a week later. At the

evidentiary hearing, Gaughan also suggested that Tuite shortchanged his defense

because he was upset with Gaughan over a bounced check.[5]

---

[5] Gaughan testified that he wrote Tuite a check for $25,000 the Saturday before
the trial started, and asked Tuite to hold the check until the following Wednesday. Tuite
cashed it before that time and was informed that the check bounced on Tuesday or
Wednesday during trial.

Failure to raise a meritorious claim or subject the prosecution's case to a meaningful adversarial testing may constitute ineffective assistance of counsel. *Bell v. Cone,* 535 U.S. 685, 698 (2002)*; Owens v. United States,* 387 F.3d 607, 609 (7th Cir. 2004); *Harris v. Cotton,* 365 F.3d 552 (7th Cir. 2004). However, an attorney's failure must be virtually complete. *Bell,* 535 U.S. at 698. "A lawyer's decision to call or not to call a witness is a strategic decision generally not subject to review." *United States v. Williams,* 106 F.3d 1362, 1367 (7th Cir. 1997); *see also United States v. Balzano,* 916 F.2d 1273, 1294 (7th Cir. 1990). In rare cases, an attorney's failure to investigate or call specific witnesses may constitute ineffective assistance of counsel. *See Sullivan v. Fairman,* 819 F.2d 1382, 1390 (7th Cir. 1987); *Berry v. Gramley,* 74 F. Supp. 2d 808 (N.D. Ill. 1999). "Where a petitioner claims his trial counsel failed to call a witness, he must make a specific, affirmative showing as to what the missing evidence would have been, and prove that this witness's testimony would have produced a different result." *Patel v. United States,* 19 F.3d 1231, 1237 (7th Cir. 1994) (citations omitted).

Gaughan cites the following parts of the trial record as evidence that Tuite shortchanged Gaughan's defense due to his commitment to Judge Kilander:

> THE COURT: . . . So it's going to be today, tomorrow, Wednesday and Thursday. But I can't do it Friday. I have other commitments. Okay. And we'll pick it up again Monday.
> MR. TUITE: Tuesday.
> MR. SPIELFOGEL: Holiday Monday.
> . . .
> THE COURT: That's right. Well, there will be a four day hiatus. Anybody object to that?. . . .

MR. TUITE: I just have - - being held to a trial that starts next Wednesday where I'm representing a judge in DuPage County.

THE COURT: Why do you point to me? I'm not the one.

MR. TUITE: You're not the one, but judges sometimes get falsely accused, like Mr. Gaughan is falsely accused. But I have a commitment to be in DuPage County, Illinois on Wednesday. I'd like to hope I can finish.

THE COURT: I hope, but - -

MR. TUITE: So, I don't mind coming in on Saturday.

THE COURT: It may not happen. We will work very hard. If you have any experience with me at all, you know that I push these things very quickly and put up with no nonsense. So - - okay.

MR. TUITE: Okay. Thank you.

THE COURT: But no one objects to that four day hiatus, I take it. I don't know what else I can do. So we're talking four days this week and two next. So, six days should - - wouldn't you think, do it?

MR. TUITE: I would think.

(Tr. Trans. 9-10.)

THE COURT: . . . We may be pushed through Wednesday, you know. You told me Wednesday you start another trial.

MR. TUITE: Yeah.

THE COURT: You may be in touch with another judge somewhere and tell him what our problems are. I won't release you here until this is over.

MR. TUITE: I'm commitment [sic] here first.

THE COURT: You and I talked before this trial started about that problem and I'm just telling you the way things are going.

(Tr. Trans. 341.)

THE COURT: . . . Still think we'll finish by Tuesday?

MR. TUITE: Oh, yeah. We will.

(Tr. Trans. 474-75.)

THE COURT: I'm just trying to get my time frames together here.

. . .

THE COURT: Okay. So, this [testimony of Agent King] might be it, right?

MR. TUITE: Probably have him [Agent King] for about another - - with cross, maybe an hour.

THE COURT: That's all the evidence.

18

> MR. TUITE: And some stips.
> THE COURT: I understand that.
> MR. TUITE: We're lining up witnesses tonight.
> THE COURT: You're going to - - I'm sorry, gees. I'm getting old. How many witneeses are you going to have, Mr. Cohen, about?
> MR. COHEN: About zero.
> THE COURT: And Mr. Lewis, you?
> MR. LEWIS: Zero.
> THE COURT: Mr. Tuite, how many are you going to have?
> MR. TUITE: Two maybe.
> THE COURT: Long, short?
> MR. TUITE: They will be short witnesses as far as time.

(Tr. Trans. 542-43.)

> THE COURT: [Adjourning for the day on Wednesday, January 13, 1999] 9:00 o'clock tomorrow morning. Have your witnesses ready, whoever is going to be calling.
> MR. TUITE: Right.

(Tr. Trans. 621-22.)

Gaughan asserts that "[i]f [Tuite] had presented a defense, called . . . witnesses, and presented evidence to support Petitioner's version of the events, he could not have completed this case in time to present oral arguments on Tuesday, January 19, 1999, so that he could be free to defend Judge Kilander on January 20, 1999." (Memo. Supp. 18.) The Government argues that "although Mr. Tuite mentioned the case during the trial, Mr. Tuite knew well before the end of the trial that the other case was being continued." (Resp. 24.) The Government attributes Mr. Tuite's failure to call each of Gaughan's proposed witnesses "either to a valid tactical decision by counsel or the failure of Gaughan to inform counsel of the existence of the witnesses." (Resp. 24.)

Both Tuite and Cotter testified credibly at the hearing that they never rushed Gaughan's case because of another case or a bounced check. Initially, Gaughan's trial was set for January 11th, and the Kilander trial was set to begin January 20th. On January 14th, Tuite inquired with this court about whether his associate Cotter could appear for Gaughan's verdict due to the Kilander trial. But, as Tuite testified and a court order from the Kilander case presented at the hearing confirmed, the Kilander trial was continued on January 14th, and the January 20th trial date was converted into a status hearing. Tuite testified that he informed Gaughan of that development. The court credits Tuite and Cotter's evidentiary hearing testimony and finds based on this testimony and the record, including the portions of the trial transcripts cited by Gaughan, that neither attorney rushed Gaughan's case or trial. However, for Gaughan's benefit the court now addresses each of Gaughan's specific arguments as to his counsel's alleged failure to present an adequate defense.

### a. Failure to call Gaughan as witness

Gaughan asserts that he expected to testify on his own behalf at trial. However, Gaughan stated at trial that he understood his decision not to take the stand. In his closing brief Gaughan goes so far as to argue, for the first time, that his waiver of his right to testify was based on incorrect and incomplete information from trial counsel. (Pet.'s Closing Br., criminal docket # 629, at 7.) The "invalid waiver" issue, which is distinct from Gaughan's ineffective assistance of counsel claim, was not raised in

Gaughan's petition or any supplemental filing prior to the hearing,[6] and the court will not entertain it now. In the context of *Strickland,* however, Gaughan testified that Tuite told him that he should not testify because doing so would open the door for questions about Gaughan's prior criminal history. The court finds that Tuite's advice to Gaughan not to take the stand fell within the wide range of professional assistance required of attorneys under the first prong of *Strickland*, and that, as he stated in open court, Gaughan understood his decision not to testify. Further, Gaughan has presented no convincing argument that he would have had a reasonable shot at acquittal had he taken the stand and subjected himself to examination on, for example, his prior criminal history. Accordingly, Gaughan fails to meet the second prong of *Strickland* as well.

### b. Failure to call Kulikowski as witness

Gaughan argues that Kulikowski would have testified regarding Gaughan's medical condition and as to the fact that she was the one who placed the gun in the car without Gaughan's knowledge. At the evidentiary hearing, Kulikowski testified generally as to both of these points. However, Tuite testified that he did not call Kulikowski at trial because he did not believe she would be helpful. Further, Tuite did not want her to be near the jury after she was dismissed from the case to give any impression that she was also guilty. Tuite also believed that there was some animosity

---

[6] Gaughan was even afforded the unusual opportunity to submit additional issues for consideration at the evidentiary hearing as late as ten days before the hearing date. (Order, criminal docket # 566, at 2.) Gaughan did file a pre-hearing statement, *see* civil docket # 7, but he did not raise the issue of the invalidity of his waiver of his right to testify.

between Gaughan and Kulikowski, and therefore Tuite could not be sure that her testimony would be "friendly." The court finds Tuite's testimony to be credible. Tuite's failure to call Kulikowski as a witness did not constitute ineffective assistance under the first prong of *Strickland*. Gaughan's argument as to Tuite's failure to call Kulikowski fails the second prong of *Strickland* as well. As highlighted by Tuite's testimony, Kulikowski may have harmed Gaughan's case much more than it may have helped it. Tuite's failure to call Kulikowski at trial does not contribute to Gaughan's ineffective assistance claim.

### c. Failure to call other witnesses

Only one putative witness was discussed in great detail at the evidentiary hearing: Pat Stebbins. Gaughan claims that Stebbins was the security guard at his roofing and construction business. Gaughan asserts that he legally possessed the gun that was found in his car during his arrest, and that he generally kept it in a desk drawer at his business for security purposes. According to Gaughan's petition, Stebbins would have testified that on one occasion some of Gaughan's employees were arguing with him and throwing ice on his car, and that after the employees broke Stebbins' windshield with a piece of ice, Stebbins took the weapon out of the drawer and began acting in an alarming manner. Stebbins would have further testified that Gaughan took the gun away from him and gave it to Kulikowski to put in a safe place, and that Kulikowski then locked the gun in Gaughan's car. Stebbins also would have produced a receipt for the windshield's repair. Gaughan's petition explains that Stebbins' testimony

would have shown that Gaughan was not aware that the gun was in his car in violation of 18 U.S.C. § 924(c). (Memo. Supp. 14.) Gaughan argues in his petition that Tuite met with Stebbins for more than two hours to discuss his possible testimony and that "Tuite was pleased with this and agreed that Stebbins was both credible and valuable to the defense." (Memo. Supp. 18.)

At various points in Gaughan's petition, testimony, and closing brief, Gaughan also argues that a number of other individuals should have been called to testify as part of his defense, including Michael Nolfe, David Hall, Jesus Ferdinand,[7] Gregory Kulik,[8] Mr. Barnes, Ms. Horner, Mr. Fernandez, and Ed Valentine. Gaughan testified that, in addition to Stebbins, he drove Valentine to Tuite's office to be interviewed. Gaughan also testified that he believed many of these witnesses would have been called because during opening arguments Cotter informed the jury that they would hear from them. However, Gaughan testified that he recognized that the opening statement was not a guarantee that any of them would be called. Gaughan also asserts that Drs. Tze and

---

[7] In his petition, Gaughan asserts that Nolfe, Hall, and Ferdinand would have testified that Gaughan was in Bollingbrook, Illinois, on December 6 and 7, 1997, to counteract the testimony of the Government's witness, Bonner, that Gaughan was doing a deal with him in Cicero, Illinois, on December 7, 1997, at 9:00 a.m. (Memo. Supp. 15-16.)

[8] Part of the Government's evidence against Gaughan was a collection of phone records documenting the frequent calls between Gaughan and Bonner. Gaughan asserts that these phone calls had a legitimate purpose: Gaughan was attempting to collect his payment for special carburetors that Bonner purchased from Gaughan's car part supply shop. Gaughan argues that Kulik would have discredited Bonner's testimony by testifying that he supplied Gaughan with the carburetors that Gaughan then sold to Bonner. (Memo. Supp. 16-17.)

Ivanovic would have testified that at the time Gaughan made incriminating statements, his condition was so bad that he would have said anything to get his medications and some relief. (Memo. Supp. 17.)

Gaughan's argument regarding Tuite's decision not to call these witnesses fails because he has not presented sufficient evidence. The Seventh Circuit has stated:

> Where the petitioner rests his claim of a sixth amendment violation on the failure of his trial counsel to adduce evidence or call witnesses, the petitioner cannot meet these burdens absent a specific, affirmative showing as to what the missing evidence or testimony would have been. . . . Under usual circumstances, we would expect that such information would be presented to the habeas court through the testimony of the potential witnesses . . . . [I]f the potential witnesses are not called [before the district court], it is incumbent on the petitioner to explain their absence and to demonstrate, with some precision, the content of the testimony they would have given at trial.

*United States ex rel. McCall v. O'Grady,* 908 F.2d 170, 173 (7th Cir. 1990) (alterations in original, quoting *United States ex rel. Cross v. DeRobertis,* 811 F.2d 1008, 1016 (7th Cir. 1987)). "[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi,* 932 F.2d 643, 650 (7th Cir. 1991).

Although Gaughan was afforded the opportunity to call these witnesses at his evidentiary hearing held on June 15, 2006, he did not do so. Gaughan also has not

attempted to explain their absence or present their testimony by way of affidavit. Even despite this evidentiary shortcoming, however, Gaughan's argument that Tuite was ineffective for not calling these witnesses is meritless because Gaughan cannot meet the first prong of *Strickland*.

Tuite testified at the evidentiary hearing that he did interview Stebbins prior to the trial. However, Tuite testified that when he tried to elicit facts from Stebbins regarding the altercation at Gaughan's business involving the gun, Stebbins stated: "Tell me what to say." Tuite testified that at that point, he did not consider Stebbins to be a truthful and credible witness. Similarly, Cotter testified that during the interview Stebbins' memory was vague and he was not able to keep his story straight. Cotter also testified that Stebbins said: "Just tell me what you want me to say." Cotter then considered Stebbins to be a perjurer unsuitable for testifying. The court finds Tuite and Cotter's consistent testimony to be more credible than Gaughan's on this issue. The Court of Appeals has stated: "[W]e cannot fault an attorney for failing to call a potentially damaging witness." *Ashimi,* 932 F.2d at 650. Thus, the court finds that the decision not to use Stebbins as a witness at trial was a strategic and reasonable one.

With regard to Drs. Tze and Ivanovic, Tuite testified that he did not believe that the doctors' testimony would be helpful during trial because the doctors would testify that Gaughan was not in extreme physical danger at the time he confessed. Tuite also believed that bringing up the medical issue at trial would not advance the case. As the Government points out and the record reveals, both doctors testified at length on

Gaughan's behalf at the suppression hearing, at which time the court denied Gaughan's

motion and found that Gaughan had not confessed involuntarily. The court credits

Tuite's testimony that, as a strategic matter, the doctors' testimony would have been

useful to Gaughan with regard to whether his confession was voluntarily made (an

issue addressed and decided at the suppression hearing), but would have less bearing

on Gaughan's ultimate guilt. Further, the doctors may have only hindered Gaughan's

case by testifying that Gaughan's physical condition was not as extreme as Gaughan

made it out to be. In evaluating Tuite's conduct, the court must "refrain from second

guessing an attorney's tactical decisions." *United States v. Godwin,* 202 F.3d 969, 973 (7th

Cir. 2000). For this reason, the court finds that Tuite's failure to call Drs. Tze and

Ivanovic as trial witnesses does not contribute to Gaughan's ineffective assistance claim.

       As for the remaining putative witnesses, Tuite testified that he asked Gaughan to

provide a list of witnesses and bring witnesses in to be interviewed. A list Gaughan

wrote for Tuite, which was presented at the hearing, displayed the names Gregory

Kulik, Carlo Lentra, and Pat Stebbins. Tuite and Cotter both testified that, aside from

Stebbins, Gaughan did not bring in the witnesses he suggested for interviewing or

provide sufficient contact information for them. The court finds Tuite and Cotter's

testimony to be more credible than Gaughan's on this issue. Accordingly, Gaughan

cannot rely on Tuite's failure to call these witnesses in support of his argument that

Tuite's representation fell below the range of competence expected of counsel as

required by *Strickland. United States v. Farr,* 297 F.3d 651, 658 (7th Cir. 2002) ("An

26

effective assistance of counsel claim cannot rest upon counsel's alleged failure to engage in a scavenger hunt for potentially exculpatory information with no detailed instruction on what this information may be or where it might be found."); *Ware v. McAdory,* No. 96 C 5123, 2003 WL 21355478, at *7 (N.D. Ill. Jun. 10, 2003) (citing *Farr*; client did not provide witness' contact information).

### d. Failure to utilize/challenge cell phone records

Gaughan briefly argues that Tuite and Cotter should have made better use of the cell phone records presented by the Government during Bonner's cross-examination by showing the jury that Gaughan and Bonner's contact was regular only in the last few months prior to Gaughan's arrest. (Pet.'s Closing Br. 3-4.) Gaughan's argument fails the second prong of *Strickland* because he cannot show prejudice. The evidence against Gaughan was substantial– most notably, the Government presented the jury with Gaughan's own confession that he and Bonner had conducted 20 to 30 drug transactions in kilogram quantities. (Tr. Trans. 571-72.) Gaughan cannot show that he would have had "a reasonable shot at acquittal" had Tuite decided to focus his defense strategy on the cell phone records to the extent that Gaughan now, in hindsight, submits that Tuite should have. *Gibbs,* 329 F.3d at 584.

### e. Failure to share discovery with Gaughan

In his post-hearing closing brief, Gaughan raises, for the first time, the argument that Tuite was ineffective in conducting his defense by failing to "share discovery with him." (Pet.'s Closing Br. 3.) However, Gaughan has failed to establish Tuite's

ineffectiveness in this regard. Gaughan cites no authority indicating that counsel had a duty to provide Gaughan with access to or copies of discovery materials. Every authority the court could locate suggests the opposite. *See, e.g., White v. Cason,* No. 04-CV-75071, 2006 WL 763194, at *11 (E.D. Mich. Mar. 24, 2006) (counsel not ineffective; criminal defense attorney has no duty to share discovery documents with client); *Ramsden v. Warden, Dept. of Corrs.,* No. Civ. 02-138-B-S, 2003 WL 356031, at *10 (D. Me. Feb. 14, 2003) (holding that counsel was not ineffective, stating: "I could find no case that stood for the proposition that, in order to deliver constitutionally adequate representation, an attorney must provide his client in every case with hard copies of the discovery documents and investigative reports."); *Carillo v. United States,* 995 F. Supp. 587, 591 (D.V.I. 1998) ("[T]here is no constitutional duty to share discovery documents with petitioner. Petitioner cites no case law for this proposition, and this court finds none."). This court joins the chorus. Gaughan's claim that Tuite was ineffective for failing to share discovery materials fails under the first prong of *Strickland*.


**III. CONCLUSION**

For the foregoing reasons, Gaughan's motion to amend his petition to include a *Booker* claim (cause no. 2:97 CR 168, docket # 552) is **DENIED.** Because the court finds that there is no credible evidence that Gaughan's trial counsel was constitutionally ineffective, Gaughan's petition under § 2255 (cause no. 2:02 CV 169, docket # 1; cause

no. 2:97 CR 168, docket # 477) is **DENIED** and this case is **DISMISSED.** The court

directs the clerk to enter judgment accordingly.

**SO ORDERED.**

ENTER: September 28, 2006

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT